JOSEPH G. BOMBAGETTI, JR., Plaintiff-Appellee, v. ABDUL AMINE, Defendant-Appellant.

First District (3rd Division)   No. 1—91—1572

Opinion filed September 29, 1993.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Mary Elisabeth Ruether, of counsel), for appellant.

Bernard R. Nevoral & Associates and McBride, Baker & Coles, both of Chicago (Bernard R. Nevoral and Richard R. Winter, of counsel), for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This is a medical malpractice action against defendant for the improper removal of the wrong disk during a back operation on plaintiff. At trial, the court directed a verdict in favor of plaintiff on the issue of liability and instructed the jury to determine proximate cause and damages. The jury rendered an award of $750,000 in favor of plaintiff for past and future pain as well as disability. Defendant appeals from the judgment as well as the jury award.

In the spring of 1982, plaintiff injured his lower back, after his four-year-old daughter jumped on him. Plaintiff experienced immediate pain and numbness throughout both legs and could not move his toes. By the time he saw defendant, Dr. Abdul Amine, on November 4, 1982, he had been experiencing excruciating pain for three months. Amine diagnosed a herniated disk at the L4-L5 space and a bit of narrowing of the spine at the L5-S1 space. Amine performed a laminectomy on December 14, 1982. Two days later, Amine reviewed an X ray and realized that he had mistakenly removed the disk at L3-L4. Amine informed plaintiff about the mistake and operated on the L4-L5 disk on December 17, 1982.

Plaintiff testified that after the first surgery, his pain worsened and he experienced a burning sensation running down his legs and across his back. The pain progressively worsened before the second surgery and plaintiff could not walk unaided. Following the second surgery, plaintiff's pain was relieved. Since the surgery, plaintiff has not performed well as a pipefitter and he has restricted his lifting to less than 60 or 70 pounds. In fact, he changed jobs to avoid lifting. The pain has also affected plaintiff's ability to play with his children and actively participate in other recreational activities.

In August 1983, six months after surgery, plaintiff noticed a "snap" in his back while lifting some pipe at work. A couple of days later, plaintiff awoke with his back "kinked" to the left, experiencing severe pain in his lower back. Defendant Amine was consulted and at

trial he testified that his analysis of the pain relapse was a "facet dislocation."

Plaintiff's expert at trial, Dr. Mark Lorenz, a board-certified orthopedic surgeon and chief of spinal surgery at Loyola Medical Center, testified that the disk at the L3-L4 interspace served a useful purpose in providing stability and cushioning to the spinal column. Because of the removal of the healthy L3-L4 disk, the disk space between L3 and L4 had collapsed and the vertebrae shifted and settled. This is known as retrolisthesis and subluxation. In his expert opinion, the collapsed space and the retrolisthesis were caused by the mistaken surgery of Amine. Lorenz also stated that with a "fairly high probability" these conditions were the source of plaintiff's pain. Lorenz further testified as to whether the plaintiff's condition is permanent: "[N]othing can be done with it. He [Plaintiff] always has to live with this."

Defendant's expert, Dr. McNeill, testified that the pain was emanating from either the L3-L4 or L4-L5 interspaces. McNeill also stated that the unnecessary removal of a healthy disk at L3-L4 made plaintiff more susceptible to future injury.

The trial court directed a verdict against defendant at the close of all evidence based upon defendant's admission, as well as that of his expert, that defendant was negligent and that his negligence proximately caused at least some injury to plaintiff. The trial court then instructed the jury "to decide the extent of [plaintiff's] damages proximately caused by [defendant's] negligence and what amount of money will reasonably and fairly compensate the plaintiff for those damages."

On appeal, defendant contends the following: (1) plaintiff failed to prove that defendant's negligence proximately caused any pain and suffering, and therefore, a judgment notwithstanding the verdict should be entered in defendant's favor; (2) plaintiff failed to prove disability, and therefore, judgment notwithstanding the verdict should be entered in defendant's favor; (3) the trial court improperly directed a verdict on the issue of proximate cause and damages; (4) a new trial is warranted based upon the improper admission of certain evidence; and (5) the jury's award is beyond the flexible range of permissible verdicts and must be reduced or a new trial granted.

■ We initially address the issue of proximate causation. In *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423-24, 328 N.E.2d 301, 304-05, the Illinois Supreme Court clarified the plaintiff's burden of proof in a medical malpractice negligence case:

"[P]laintiff, by the use of expert testimony, must establish the standards of care against which the defendant's doctor's conduct is measured. The plaintiff must then further prove by affirmative evidence that, judged in light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. [Citations.]

\*\*\*

\*\*\* Under accepted instructions this burden must be sustained by proving that the proposition on which he has the burden (proximate cause) is more probably true than not true."

Applying the aforesaid principles, this court must decide whether plaintiff's back pain was more probably than not caused by defendant's removal of the wrong disk during the initial back operation. The evidence clearly shows that the pain caused after the initial surgery was due to the erroneous removal of the disk at the L3-L4 interspace instead of the L5-L6 disk. The testimony of the experts, as well as of defendant himself, sufficiently supports a finding of proximate cause between defendant's negligent removal of the wrong disk and the exacerbated pain of plaintiff between the two operations. Plaintiff's wife, a registered nurse, testified that defendant informed her that her husband's intensified pain after the first operation was caused by his mistaken removal of the wrong disk. After the second operation, wherein the appropriate disk was removed, plaintiff's pain was relieved.

However, whether plaintiff's pain and the "snapping" of his back in 1983 were proximately caused by defendant's negligence presents a more difficult question. Defendant testified that his analysis of plaintiff's kinking episode was a "facet dislocation." Defendant's expert, Dr. McNeill, then corroborated the testimony of plaintiff's expert by stating that the removal of a healthy disk at L3-L4 could have caused a "misalignment" or facet dislocation which, in turn, could have produced plaintiff's pain.

In a medical malpractice action, a plaintiff must produce evidence, either direct or circumstantial, that injuries exist and that they were the result of the occurrence at issue. Moreover, an action may not be based upon conjecture or speculation. (*Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406.) However, the plaintiff is not required to prove his case beyond a reasonable doubt. It is only where the evidence, and all reasonable inferences drawn therefrom, when viewed most favorable for plaintiff, so overwhelmingly favors defendant that no reasonable person could find for plaintiff, that the decision as to causation should be taken from the jury. It

is within the province of the jury to weigh the facts, judge the credibility of the witnesses and ultimately ascertain the truth. *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212; *Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893.

Over defense counsel's objection that there had been no showing of causation, the trial court directed a verdict against defendant, finding that at a minimum, some of plaintiff's pain was caused by the delay in the defendant's correct treatment of plaintiff. Subsequently, defense counsel did not object to the court's proposed jury instruction on causation which incorporated the court's finding:

> "The court has found the defendant negligent, that his negligence proximately caused damage. Your duty is to decide the extent of those damages proximately caused by that negligence and what amount of money will reasonably and fairly compensate the plaintiff for those damages."

Defendant testified that as a result of the removal of the wrong disk at L3-L4, the disk space at this level had narrowed, increasing the load on plaintiff's facet joints. He further testified that such a narrowing can produce a grinding of the facets which in turn generates pain. After plaintiff's back snapped in 1983, defendant diagnosed the episode as pain resulting from a "facet dislocation." Both plaintiff's expert and defendant's expert testified that plaintiff's kinking episode was more probably than not caused by the removal of the wrong disk at the L3-L4 level. However, plaintiff's expert, Dr. Lorenz, admitted that there was no "objective evidence" that the facet was compromised by the original surgery. Defendant's expert, Dr. McNeill, further stated that if there existed a facet dislocation, it could have occurred at L3-L4, L4-L5 or L5-S1.

■ While it is true that an expert may not base an opinion on speculation or mere conjecture, it is also well settled that a physician may testify as to what "might or could" have caused the injury, despite an objection that the testimony is inconclusive. (*Beloit Foundry v. Industrial Comm'n* (1976), 62 Ill. 2d 535, 343 N.E.2d 504; *Mesick v. Johnson* (1986), 141 Ill. App. 3d 195, 490 N.E.2d 20.) Moreover, where the expert testimony indicates that the injury could have been caused in a number of different ways, plaintiff need not produce expert testimony to show specifically which of the possibilities caused the injury. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392.) It has been held that even where there is less than a 1% chance that a plaintiff's injury was caused by the negligence of defendant, this is just another factor to be considered by

the jury. *Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 477 N.E.2d 1270.

Finally, defendant asserts that plaintiff's later pain was caused by his preexisting back injury at the L4-L5 level, which put him at increased risk of injury even without the first surgery. However, defendant admitted that the removal of the wrong disk predisposed plaintiff to future injury. Moreover, it is well settled that a tortfeasor is liable for the injuries he causes, even though the injuries consist of the aggravation of a preexisting condition. *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391.

■ Based upon the evidence presented at trial, as well as the absence of any contradictory evidence, we find that the trial court properly directed a verdict as to the liability of defendant. Moreover, the jury, after weighing all of the evidence presented and the credibility of the witnesses, could have found that the actions of defendant proximately caused plaintiff's increased pain during the two operations as well as his painful kinking episode in 1983. In 1984, when defendant last examined plaintiff, he was still experiencing pain at which time defendant said he should "try and learn to live with some of this pain." This evidence would also support a jury award for future pain and suffering.

■ Defendant also contends that the jury award improperly included an amount for disability, since no evidence as to disability was presented and plaintiff was "functionally normal." These assertions are without merit. Plaintiff and his wife both testified as to plaintiff's disability. Moreover, defendant and defendant's expert testified as to plaintiff's predisposition to future injury. Drawing all reasonable inferences from this testimony, the jury could have concluded that plaintiff warranted monetary compensation for curtailment of his bodily activities in both his recreation and employment.

■ Finally, defendant requests that we reduce the amount of the jury's award. A jury's award should not be disturbed on review as excessive unless it is shocking to the judicial conscience. (*Altszyler v. Horizon House Condominium Association* (1988), 175 Ill. App. 3d 93, 529 N.E.2d 704.) Plaintiff, a 29-year-old man with a family, has suffered pain and restricted bodily movement for the past eight years. Moreover, based upon his life expectancy, he will probably continue to endure pain and suffering for the remainder of his life. Under these circumstances, we cannot say that the jury usurped its authority in determining this award.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby affirmed in all respects.

Affirmed.

RIZZI and GREIMAN, JJ., concur.