Vincent TESTA, Plaintiff–Appellant,

v.

VILLAGE OF MUNDELEIN, ILLINOIS, Mundelein Police, Lieutenant Pender, et al., Defendants–Appellees.

No. 95–2761.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 5, 1996.

Decided July 15, 1996.

Kenneth N. Flaxman (argued), Chicago, IL, for Vincent Testa.

Richard T. Ryan, Mark F. Smolens (argued), Richard L. Jones, Flynn, Murphy & Ryan, Chicago, IL, for Mundelein Police, Lieutenant Pender, Donald H. Hansen, Joseph Bronge, Village of Mundelein, Illinois.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

BAUER, Circuit Judge.

On an October evening in 1991, a fight erupted outside Vincent Testa's home in Mundelein, Illinois. Testa did not participate in the initial skirmish, but that did not stop him from getting into an argument with the Mundelein police officers who arrived on the scene. The officers eventually arrested Testa for disorderly conduct and obstructing a police officer. Although an Illinois Circuit Court acquitted Testa on July 7, 1992, the October altercation would not be his last dispute with the Village of Mundelein.

This being a litigious society, Testa brought a claim under 42 U.S.C. § 1983 against the Village and the police officers for unlawful arrest and a state law claim for malicious prosecution. Both parties consented to trial before a magistrate judge, and Testa presented his claims to a jury, which returned a verdict in favor of the defendants on the § 1983 claim, but awarded Testa $1,500 on his malicious prosecution claim. Testa considers this a Pyrrhic victory; the magistrate judge ordered all parties to bear their own costs. The district court also denied Testa's motion for a new trial under Federal Rule of Civil Procedure 59(a). On appeal, Testa claims: 1) that the magistrate judge should have declared a mistrial because of improprieties in the defense's opening statement; 2) that the jury should have received an "eggshell skull" instruction; and 3) that the award on the malicious prosecution claim entitled him to reasonable litigation costs. Testa would like a new trial on damages (not surprisingly, he is content with the jury verdict on liability) or, at a minimum, an award of attorney's fees and costs. Because the district court acted within its discretion on all of the above issues, we affirm.

## BACKGROUND

Testa cites numerous alleged errors that occurred at trial, beginning with the defense's opening statement. Testa's counsel twice objected to subjects that the defense raised in its opening. The first objection was to the defense's representations about a July 1991 incident between Testa and Lieutenant Donald Hansen, one of the defendant police officers who arrested Testa after the October argument.

The July incident involved another fight in front of Testa's house. During that altercation, Testa allegedly cursed Lieutenant Hansen and another police officer, and threatened the mayor of Mundelein. In the defense opening, counsel suggested that the July incident was the starting point for the animosity that ultimately boiled over in October. Defense counsel described the incident in great detail, including the expletives

that Testa shouted at Officer Hansen and the profanity he directed at the watch commander over the telephone later that evening. The opening statement also noted that the records from Dr. Leo Jacobs, Testa's psychiatrist, did not include any mention of the July incident, despite the fact that Dr. Jacobs treated Testa between July and October. Eventually, plaintiff's counsel interrupted and objected to what he perceived as "closing argument stuff." The magistrate judge, without ruling on the objection, instructed counsel to move on.

Following this interruption, defense counsel continued to refer to the records of Doctors Berger and Jacobs, the physician and psychiatrist, respectively, who had treated Testa. The defense concluded its opening statement by inviting the jury to ask questions and draw inferences from the evidence that would be presented. The following excerpt from the transcript indicates how plaintiff's counsel and the district court responded:

> [DEFENSE COUNSEL]: When you hear the testimony about how horrible this was, how Mr. Testa became a basket case, ask yourself why it was that Mr. Testa saw Dr. Jacobs eight times, 30–minute sessions, eight 30–minute sessions over a two-year period. That's how severe this supposed psychiatric condition of Mr. Testa was. Ask yourself why Dr. Jacobs—he doesn't have any knowledge or recollection of ever being told any of the events, any of the facts underlying the arrest.
>
> [PLAINTIFF'S COUNSEL]: Judge, this is closing argument again.
>
> [DEFENSE COUNSEL]: Judge, I believe this is all testimony that Dr. Jacobs has already testified to in his deposition.
>
> THE COURT: If you could wrap it up shortly.

If defense counsel's opening remarks were any indication, one would have expected the July incident and Doctors Berger and Jacobs to feature prominently in the trial. Indeed, during the sidebar at which plaintiff's counsel

requested a mistrial, defense counsel informed the court that he had mentioned the doctors' notes because he intended to call them as rebuttal witnesses if Testa referred to the notes in his direct testimony. However, except for plaintiff's closing argument critique of the defense opening statement, the July incident never was mentioned during the trial, and neither Dr. Berger nor Dr. Jacobs testified.

Testa next contends that the district court should have issued an "eggshell skull" jury instruction about Testa's pre-existing mental condition. The instruction Testa offered would have read, "if the plaintiff has a pre-existing condition which the defendant aggravates, the defendant is liable for the full consequences." The district court declined to give this instruction because it could have led the jury to believe that if the defendants aggravated Testa's condition, they would be liable for his entire condition rather than the aggravation. Instead, the court instructed the jury that if it found the defendants liable for malicious prosecution, it should award Testa compensatory damages, including damages for "mental anguish, shock and discomfort suffered because of defendants' conduct." The court also gave the Illinois Pattern instruction on proximate causation.[1]

### ANALYSIS

We review the manner in which a district court conducts a trial for abuse of discretion. *Schwartz v. System Software Associates, Inc.*, 32 F.3d 284, 286 (7th Cir.1994). A trial judge has particularly broad discretion in determining whether an incident, in the context of an entire trial, is so serious to warrant a mistrial. *United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir.1991). The exercise of this discretion includes determining whether giving a cautionary instruction, rather than ordering a mistrial, can prevent any possible prejudice. *See United States v. Ferguson*, 935 F.2d 1518, 1527 (7th Cir.1991).

---

1. The Pattern Instruction defines proximate cause as "[any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]" Illinois Pattern Jury Instr. (Civil 3d) 15.01.

446

At oral argument, Testa's attorney asserted that his opponent's opening statement at trial should be in a textbook for how not to present an opening, as well as in a textbook for judges on how not to react to improprieties in an opening statement. We ultimately hold that the district court acted well within its discretion in managing the trial, but first we address what an opening statement should and should not be.

■ Because of the widespread belief that juries typically make up their minds about a case after the opening statements, attorneys often find it tempting to convert their statements into improper opening arguments. The purpose of an opening statement is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. It is not an occasion for argument. *United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976) (Burger, C.J., concurring). Moreover, evidence of the persuasive effect of opening statements is often exaggerated. *See Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir.1995); *see also* Hans Zeisel, "A Jury Hoax—The Superpower of the Opening Statement," *Litigation*, Summer 1988, p. 17. First impressions count, but even in an era of courtroom cameras, short attention spans, and newsworthy sound bites, trial lawyers are wellserved when they follow the Broadway adage and "save a little for the last act."

■ Unfortunately for Testa, the issue is not whether defense counsel's remarks were improper, but whether they were so prejudicial as to deny Testa a fair trial. *See Schimmel*, 943 F.2d at 806. Being argumentative in an opening statement does not necessarily warrant a mistrial, but being argumentative and introducing something that should not be allowed into evidence may be a predicate for a mistrial. Testa now claims that the July incident should have been excluded from evidence as a "prior bad act" under Federal Rule of Evidence 404(b). However, no evidence of the July incident was admitted, and opening statements themselves are not evidence. At the time of its opening statement, the defense reasonably

believed that the July incident would be admissible at trial. Testa had conducted discovery regarding the incident, and the incident was referenced in a pre-trial order. Moreover, although Testa knew that witnesses to the July altercation were on the defense witness list, he did not file any pretrial motions in limine to exclude the evidence.

In addition, both before and after the opening statements, the magistrate judge gave curative instructions to reduce the potential prejudice of the defense's improper references. The district court cautioned the jury that "an opening statement is not evidence nor argument, it is simply an outline of what the lawyer expects will be proven." Moreover, the court instructed the jury to disregard any comment that defense counsel made about statements by Testa to his doctors, thereby reducing the likelihood of any prejudice. This approach was well within the district court's discretion. *See Mayall v. Peabody Coal Co.*, 7 F.3d 570, 573 (7th Cir. 1993).

■ We turn next to Testa's argument that he was denied a fair trial because the district court failed to give an "eggshell skull" instruction. Under Illinois law, a tortfeasor is liable for the injuries he caused, even though the injuries are the aggravation of a pre-existing condition. *Bombagetti v. Amine*, 254 Ill.App.3d 817, 822, 194 Ill.Dec. 114, 117, 627 N.E.2d 230, 233 (1 Dist.1993), *citing Balestri v. Terminal Freight Cooperative Association*, 76 Ill.2d 451, 455, 31 Ill.Dec. 189, 191, 394 N.E.2d 391, 393 (1979). An "eggshell skull" instruction stands for the proposition that a defendant takes his plaintiff as he finds him. *See, e.g., Brackett v. Peters*, 11 F.3d 78, 81 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1651, 128 L.Ed.2d 369 (1994); *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 822 (7th Cir. 1985). In this case, neither Dr. Berger nor Dr. Jacobs testified on Testa's behalf. Indeed, no professional testified that Testa had a pre-existing medical condition that would have made him more susceptible to injury from the defendants' conduct. Testa relied solely on his and his wife's testimony to describe his mental state. It was within the district court's discretion to decide that this evidence was insufficient to warrant an egg-

shell skull instruction. *See Bank of Illinois v. Thweatt*, 258 Ill.App.3d 349, 357, 196 Ill. Dec. 424, 429, 630 N.E.2d 121, 126 (4 Dist.), *appeal denied*, 157 Ill.2d 495, 205 Ill.Dec. 156, 642 N.E.2d 1273 (1994).

Testa's final argument is that the district court abused its discretion in ordering each party to bear its own costs. Testa contends that the jury's award of $1,500 on the malicious prosecution claim entitles him to costs as the prevailing party. *See* Fed. R.Civ.P. 54(d). However, the "prevailing party" is the party who prevails as to the **substantial** part of the litigation. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (emphasis added). District courts enjoy wide discretion in determining and awarding reasonable costs. *Id.* Considering the mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to bear its own costs is within that discretion. *See Northbrook Excess & Surplus v. Procter & Gamble Co.*, 924 F.2d 633, 641–42 (7th Cir.1991).

## CONCLUSION

For the foregoing reasons, the district court's denial of Testa's motion for a new trial and for attorney's fees and costs is

AFFIRMED.