In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 23-2397 & 23-2398

CARL CULP and ROBERTA CULP,

*Plaintiffs-Appellants/Cross-Appellees,*

*v.*

SCOTT CAUDILL, *et al.,*

*Defendants-Appellees,*

and

WHITNEY WOODS and STEVAN SCHULIEN,

*Defendants-Appellees/Cross-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cv-00106-JD — **Jon E. DeGuilio,** *Judge.*

_____

ARGUED APRIL 2, 2024 — DECIDED JUNE 20, 2025

_____

Before ROVNER, HAMILTON and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Carl and Roberta Culp filed suit alleging federal and state law claims against the defendants including: claims under 42 U.S.C. § 1983 against Fort Wayne

and Allen County police officers of excessive force in viola-
tion of the Fourth and Fourteenth Amendments; Indiana state
law claims of intentional infliction of emotional distress, neg-
ligent infliction of emotional distress, assault and battery, and
criminal mischief against defendants Whitney Woods and
Stevan Schulien; and claims against all defendants alleging vi-
olations of the Rehabilitation Act and the Americans With
Disabilities Act ("ADA"). The district court granted summary
judgment in favor of the defendants on nearly all of the
claims, leaving for trial only Carl Culp's § 1983 excessive force
claim against Fort Wayne Police Officers Woods and
Schulien, and the state law claims by both Carl and Roberta
Culp against Woods and Schulien. A jury subsequently re-
turned a verdict in favor of the defendants as to all claims ex-
cept the state law count of battery brought by Roberta Culp
against defendant Woods. As to that claim, the jury found in
favor of Roberta Culp, awarding her nominal damages of $1.
The Culps appealed, arguing that the district court erred in
granting summary judgment to the defendants. Defendants
Wood and Schulien cross-appealed, challenging the court's
decision not to award costs to them.

The claims in this case arose out of an incident involving
the plaintiffs and the defendants on August 20, 2018, which
we will only briefly relate so as to provide context for the is-
sues on appeal. On that day, Carl Culp attended an office ap-
pointment with his psychiatrist at PPG Mind-Body Medicine
in Fort Wayne, Indiana. During that appointment, he ex-
pressed to Nurse Practitioner Glassley that he had a plan to
commit suicide using a box cutter. He refused to grant Glass-
ley permission to speak to his wife for safety assurance and
also refused to go to the hospital. Glassley consulted with the

psychiatrist and then contacted the Fort Wayne Police Department's Crisis Intervention Team. In the meantime, Carl[1] decided he did not want to continue to talk with Glassley further and left the office in his wheelchair, which he used because he was a double amputee.

When the Fort Wayne officers arrived at the scene, it was raining heavily, and they observed Carl load his wheelchair into his Ford Escape and then walk, using his prosthetic legs, around the car to the passenger seat. They approached Carl while he was proceeding to the passenger door and asked to speak to him, but he refused and proceeded to enter the car and sit in the passenger seat. The situation escalated at that point. When asked to exit the vehicle, Carl told the officers he "would like to see you try" to get him out of the car and braced himself with the steering wheel. According to the Culps, an officer at one point stated to him that "we don't want to beat the ass of a handicap [sic] man." The officers used increasing physical force to try to remove him from the car, culminating in the use of a taser that was without effect, and then the use of pepper spray. At some point during the increasingly violent confrontation, Carl's wife Roberta asked Carl "why don't you get out of the vehicle?" She exited along with their dog after pepper spray was deployed, and eventually Carl was physically removed from the vehicle by the officers. The Culps brought suit against the officers who had arrived at the scene and were involved in the physical confrontation, as well as other Fort Wayne officers and officers from Allen County who arrived after Carl was handcuffed.

---

[1] In order to differentiate between Carl Culp and his wife Roberta Culp, we refer to them by their first names.

The Culps first argue that the district court improperly granted summary judgment to the Fort Wayne defendants on all counts because the supporting brief for those defendants failed to include citations to the facts that they claimed were undisputed. For this argument, they rely on the district court's local rules, which at the relevant time stated that "[t]he brief supporting a summary judgment motion or the brief's appendix must include a section labeled 'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." U.S. Dist. Ct. for the Northern Dist. Ind. Rule 56.1(a), eff. 1-1-2012 ("Local Rule") (subsequently amended). The defendants' brief in favor of summary judgment included in its appendix a document entitled Local Rule 56.1 Statement of Undisputed Material Facts, which set forth in detail the undisputed facts, but Culp asserts that the brief in support of summary judgment did not contain specific cites beyond referring the court to that document. The Culps argue that such a presentation and use of undisputed facts violates the Local Rule and that the district court should have denied summary judgment on that basis. They argue that courts are not required to scour the record to determine whether claims have sufficient factual and legal support, and that motions that fail to comply with Local Rule 56.1 are subject to denial.

That argument is upended by the plain language of the Local Rule cited by the Culps. The Local Rule at that time explicitly provided that "*[t]he brief* supporting a summary judgment motion *or the brief's appendix*" must include the statement of undisputed fact, thus allowing the use of the appendix challenged here. (emphasis added) Local Rule 56.1(a) eff. 1-1-2012. That comports with the statements by other district courts addressing that version of the local rule, recognizing

that the required statement of material facts can be set forth in either the memorandum or in the appendix accompanying the summary judgment motion. See *Graves v. Job Works, Inc.*, 2009 WL 4545108 *2 (N.D. Ind. 2009); *Hill v. Brink's, Inc.*, 2006 WL 3197160 *2 (N.D. Ind. 2006). Because the defendants set forth the statement of undisputed fact in their appendix as permitted in the rule, their summary judgment motion comported with the language of that Local Rule. The Culps cite to no legal requirement other than that Local Rule for their argument, and that rule is silent as to whether specific citations are required in the brief when the document is included in the appendix. Nor do the Culps provide any legal support for the argument that the district court would be *required* to deny the motion for summary judgment if the citations were lacking, rather than that the district court would have the discretion to do so. Although the Culps complained to the district court in their response brief about the lack of citations, the district court held that it complied with Local Rule 56.1 and chose to consider that sufficient, and the Culps have pointed to no authority that would suggest that the district court cannot make that determination and must deny the summary judgment motion. Their argument for reversal on appeal is without legal support.

The Culps also assert that the district court improperly granted summary judgment as to both the Fort Wayne Police Department and the Allen County Sheriff's Department defendants as to Carl's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ….” 29 U.S.C. § 794(a). Similarly, Title II of the ADA provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132. The term “public entity” under the ADA includes state or local governments and their departments, agencies, special purpose districts or other instrumentalities. 42 U.S.C. § 12131(1). This appeal does not question summary judgment as to the individual officers on these claims, but rather challenges summary judgment as to the Fort Wayne Police Department and Allen County Sheriff’s Department, both departments of local government. We have recognized that “[c]laims under § 504 of the Rehabilitation Act are treated as ‘functionally identical’ and can be considered together with Title II claims.” *King v. Hendricks County Commissioners*, 954 F.3d 981, 988 (7th Cir. 2020). Accordingly, we will discuss those claims together and, as we did in *King*, will refer to them collectively as “Title II.” We review *de novo* the district court’s order granting summary judgment to the defendants, examining the record in the light most favorable to the plaintiffs and construing all reasonable inferences from the evidence in their favor. *Eaton v. J.H. Findorff & Sons, Inc.*, 1 F.4th 508, 511 (7th Cir. 2021).

Carl Culp claims that the Fort Wayne and Allen County defendants violated Title II in the course of the interaction with Carl. The Culps argue that compensatory damages are recoverable where intentional discrimination is shown, and that our court has held that intentional discrimination can be

established by showing deliberate indifference. See *Lacy v. Cook Cty., Ill.*, 897 F.3d 847, 863 (7th Cir. 2018). We have adopted the two-part standard for establishing deliberate indifference, requiring both "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." (internal quotation marks omitted) *Id*.

As we recognized in *King*, "[w]hether Title II applies to law enforcement investigations and arrests, and if so to what extent, is an open question in this circuit." 954 F.3d at 988. Similarly, the applicability of Title II has not yet been decided in the Supreme Court, and the circuits diverge on this issue. See *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) (granting cert. to decide the issue but then dismissing it as improvidently granted after San Francisco changed its argument); *King*, 954 F.3d at 988. As to the initial question of whether Title II applies to investigative and enforcement actions, in *King* we declined to address that issue because even if Title II applied, the facts did not support the legal claim and summary judgment would be appropriate. The district court in this case followed the same approach, and we agree that it is proper here as well because the issue as to the applicability to law enforcement actions ultimately does not impact the outcome.

As in *King*, we assume for the purposes of this opinion, without deciding, that Title II applies to the officers' interactions, that the governmental unit can be held vicariously liable for the actions of individual officers, and that deliberate indifference is the appropriate standard by which to analyze the institutional defendants' conduct. *Id*. at 989; see also *Gray v. Cummings*, 917 F.3d 1, 16–18 (1st Cir. 2019). As we held in

*King*, in order to prevail on such a claim, the plaintiff must show that but for the disability, he would have been able to access the services or benefits desired. *King*, 954 F.3d at 989. Because the evidence fell short of that standard in *King*, the contested question as to the application of the ADA and the Rehabilitation Act to that context did not need to be decided. The same holds true for the claim before us. Even if we applied the ADA and the Rehabilitation Act to the actions of law enforcement in this case, the Culps could not survive summary judgment on the claims.

The Culps argue that courts have identified two ways in which a police officer may violate the Rehabilitation Act and the ADA in executing an arrest—wrongful arrest and failure to accommodate. They argue that under the wrongful arrest theory, a violation exists when the police officer wrongfully arrests someone with a disability because they misperceived the effects of that disability as criminal activity. They argue that the second theory is the accommodations theory, under which a violation exists when an officer properly arrests someone with a disability for actions unrelated to that disability but fails to reasonably accommodate the person's disability in the course of the arrest causing the person to suffer greater indignity in the process than other arrestees. The Culps assert that the wrongful arrest theory does not apply here, and rely only on the accommodations theory.

As in *King*, the evidence in this case falls short of the legal standard for demonstrating an ADA or Rehabilitation Act violation. There is no evidence that the actions of the police were even related to Carl's disability, nor is there evidence that but for the disability the actions by the officers would

have been different. The only connection that the Culps identified was the statement by the officer for Carl to comply and that they did not want to beat a handicapped man. That at best establishes their awareness of his disability. But that was not at issue, because it is undisputed that they saw him when he was in a wheelchair near his car, and saw him put on his prosthetic legs, stand, place his wheelchair in the trunk, walk around the car to the door, and—ignoring their requests to stop and talk—enter the car. The officers were aware of his disability but were also aware that he was capable of walking, lifting, and sitting with the prosthetic legs. Furthermore, when Carl refused the officers' commands to cooperate and exit the car, Carl's wife asked him why he did not get out of the car, thus further indicating to them that Carl was capable of doing so and that the obstacle was not any physical limitation related to his disability. Carl failed to present evidence of discrimination and also failed to present any evidence of a failure to provide a reasonable accommodation. In fact, Carl did not even request any accommodation. He never suggested to the police that his reluctance to exit the vehicle was related to his disability and that he needed an accommodation to do so. And he was out of the vehicle when he was first approached by the officers and first refused to comply with their request, thus evidencing that his oppositional conduct was unrelated to his ability to navigate into and out of his vehicle with his disability but rather was related to some other cause. He further argues that when he was arrested his prosthetic legs were damaged and mishandled by the officers, and that the officers failed to accommodate him because he told the officers the legs were not meant to get wet and they paid no attention. The district court noted that the legs had already gotten wet when Carl walked in the rain with them, and

properly held that the statement that the legs were not meant to get wet without more was inadequate to constitute a request for a reasonable accommodation or to evidence an act of deliberate indifference. We thus need not decide the applicability of the ADA and the Rehabilitation Act to the actions of law enforcement, because even if we assume the applicability, the evidence demonstrates no violation.

Finally, in their cross-appeal, the defendants argue that the district court erred in refusing to award them costs. Before the district court, both parties sought an award of costs under Federal Rule of Civil Procedure 54(d), which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." That creates a presumption in favor of awarding costs to the prevailing party, which is a party that has prevailed on a substantial part of the litigation even if the party did not succeed on every claim. Fed. R. Civ. P. 54(d)(1); *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017). The district court noted that the presumption of awarding costs to a prevailing party can be overcome, however, and that one situation in which it is often overcome is when the case results in a mixed outcome, where each side prevails in some respects. Dist. Order at 7, App. 31, citing *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996). The district court determined that this case involved such a mixed outcome in that it had allowed Roberta's claims for assault and battery to proceed to trial and a jury found in favor of her on the claim of battery against defendant Woods, awarding her nominal damages, whereas the defendants defeated the other claims by Roberta at summary judgment and all of the claims brought by Carl at summary judgment and trial. The district court noted that courts have required parties

to bear their own costs even in cases in which the plaintiffs only won a portion of their case and the damage award was relatively small. Dist. Ct. Order at 8, citing *Testa*, 89 F.3d at 447. The court concluded that this case was a mixed outcome case, and that the parties should each bear their own costs.

Only the defendants appeal that decision. The defendants, Officers Schulien and Woods, argue that they are the prevailing parties in this case and that the district court should have awarded costs to them against the Culps. That is the relief they sought in the court below as well.

On appeal, our review is highly deferential, limited to a determination as to whether the district court abused its discretion in determining that neither party would be awarded costs. The prevailing party in a case is entitled to an award of costs, but here the results were split. On numerous issues, the defendants prevailed, but as to the state law battery claim Roberta Culp prevailed and was awarded nominal damages in the amount of $1. Even nominal damages have been considered enough to support a designation as a prevailing party, and therefore provide the basis for the award of costs to that party. See generally 10 Charles Alan Wright & Arthur R. Miller, 10 Federal Practice & Procedure § 2667 (4th ed. 2025); *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001). The defendants argue that the court should have determined that they were the prevailing party and awarded costs because they succeeded on the claims as to Carl Culp, but the district court considered that argument and recognized that success in its determination that there was a mixed outcome. We have repeatedly recognized that the district court retains "especially broad discretion to award or deny costs in mixed result cases

… including cases in which liability was established but re-covery was nominal relative to what was sought." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999); *Baker*, 856 F.3d at 502–03; *Testa*, 89 F.3d at 447. The question now is whether the court abused that discretion in determining that costs would not be awarded to either party, and under that highly deferential standard, there is no reversible error here. The court properly identified the law regarding the award of costs to prevailing parties, and its decision was based on its determination that this is a case with a mixed outcome and that in such cases courts often require parties to bear their own costs. That determination is supportable on the record, and the court's determination as to costs was not an abuse of discretion.

Accordingly, the decision of the district court is AFFIRMED.