NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 15, 2011
Decided April 27, 2011

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

| | |
|---|---|
| No. 10-2747 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| VALLEY AIR SERVICE, INCORPORATED, an Illinois corporation, | |
| *Plaintiff-Appellee,* | |
| | No. 1:06-cv-00782 |
| *v.* | |
| SOUTHAIRE, INCORPORATED, a Tennessee corporation, et al., | |
| *Defendants-Appellants.* | Blanche M. Manning, *Judge*. |

**O R D E R**

Two juries, one in 2009 and the other in 2010, have considered issues in this case which involves the sale of a used jet aircraft. The facts we will recite in this order come from one or both of the trials. They are viewed in the light most favorable to Valley Air Service, Inc. ("VAS"), the purchaser of the aircraft, because it took first place in both trials. VAS, based in Elgin, Illinois, operates a charter flight business.

Ed Brunner is the president of Southaire Incorporated, operating out of Memphis, Tennessee. Southaire buys and sells aircraft and acts as a broker in selling other people's aircraft. Because Brunner and Southaire (it has only one other employee) are really one and the same, we'll refer to them interchangeably as we move along. With that understanding, we start with the facts which began to unfold in 2005 when Brunner orchestrated what looks to be a somewhat unusual deal.

In 2005, Brunner was acting as the broker for the sale of a 1983 Cessna Citation 550 jet airplane. On the same day the plane was sold, Brunner turned around and bought it himself from the new owners for more than they had just paid for it. He also had a prior relationship with the pilot for the original owners, so he paid him a finder's fee as part of the transaction. In August of 2005, Brunner entered into a contract to sell the jet to VAS. Prior to closing the deal, the plane was at a Central Flying Service (CFS) facility in Arkansas for inspection and repairs. On October 11, 2005, the deal closed, and VAS took possession of the jet. The price tag was $1,913,667. But things got testy soon after VAS received the plane. Among other things, it claimed that the plane had significant prior damage that was not disclosed. Unable to resolve disputes over the condition of the plane, VAS filed this suit against Southaire claiming breach of contract and fraud. Later, VAS added CFS to the case as a defendant.

After some pretrial skirmishes, CFS settled with VAS for $75,000. After that, a two-week jury trial resulted in a mixed general verdict: the jury found in favor of Brunner on the fraud claim and in favor of VAS on the breach of contract claim. Damages for VAS were set at $40,696. In addition to the general verdicts, however, the jury answered a number of special interrogatories that were found by the district court to be inconsistent with the general verdicts. In particular, despite its verdict for Brunner on the fraud claim, the jury found, in an answer to one of the interrogatories, that he represented that the plane had no damage history when in fact that was not true. The jury also found, in another interrogatory, that VAS did not provide formal notice of breach of contract to Southaire prior to filing suit.

How this all came to pass was a bit unusual. After the district judge received the verdict form from the jury, she read the general verdicts and asked the parties if they wished to have the jury polled. Both sides declined, and the jury was discharged. The jury's answers to the interrogatories were not read (or provided) to the parties prior to sending the jury home. The judge explained that she discharged the jury before disclosing the answers to the interrogatories because the defects (i.e. the inconsistencies) were so serious that she did not believe further deliberations by the jury would be helpful.

VAS suggests that the general verdict and the inconsistent answers to the interrogatories resulting from the first trial cannot be "fully understood without

appreciating the impact of the tactics employed" by Brunner's counsel. With that claim, the district judge seems to agree. In one order she wrote, "The defendants have followed a regrettable yet consistent pattern in this case of disregarding court orders." She also issued a rule to show cause against Brunner's counsel, and admonished that "zealous advocacy is not without boundaries." Further, she wrote that, "Litigation of this matter has been spiraling downward for some time, due to the scorched earth tactics that [Brunner's counsel] have adopted. [Counsel] are hereby formally advised that their present course of conduct is unacceptable and must cease."

One regrettable thing occurred during opening statements when Brunner's counsel told the jury: "They've already sued Central Flying Service. Okay. They sued Central Flying Service. They decided to settle with them. They settled with them for $75,000." This comment, it goes without saying, was out of bounds. While the judge indicated an inclination to grant VAS's motion for a mistrial, VAS withdrew its motion in favor of a curative instruction. Even so, the judge warned Brunner's counsel, following a further reference to the settlement, that he would be sanctioned for any more inappropriate comments to the jury.

The judge addressed several of the issues presently on appeal in an order issued on September 15, 2009. In this order, she held that VAS was entitled to a new trial on its fraud claim and a new trial limited to damages on its contract claim. The judge granted a new trial on the fraud claim because the jury's answers to the special interrogatories, although internally consistent, were inconsistent with the general verdict, and any attempt to reconcile the two is "tortured and simply untenable in light of the facts and circumstances of this case."[1] The judge also held that VAS was entitled to a new trial on damages on the contract claim because the only testimony on the difference in value between the actual condition of the aircraft and the value of the aircraft as promised was testimony which pegged this element at something above $200,000; the jury's award of $10,000 in direct damages (part of the $40,696 award) therefore was "not rationally linked to the evidence presented at trial, is manifestly inadequate, and bears no reasonable relationship to the loss suffered by Valley Air."

Prior to the start of the second trial, VAS waived its request for punitive damages on its fraud claim. Consequently, the court entered judgment on the fraud claim for VAS and limited the second trial to a damages determination on both fraud and breach of contract. The second jury awarded $102,960.60 in damages.

Brunner raises five issues on appeal. Four of the issues relate to matters that

---

[1]Fed. R. Civ. P. 49(b)(3) gives the judge the authority to reconcile a general verdict with inconsistent answers to interrogatories and enter a judgment accordingly or order a new trial.

occurred during and after the first trial. None of his claims have merit, so we will not discuss them all. Instead, we'll focus on three claims: (1) that VAS failed to give him "notice" of its breach of contract claim; (2) that the district judge erred when she declined to set-off the $75,000 VAS received from its settlement with CFS; and (3) that VAS was not the "prevailing party" in the litigation and thus not entitled to costs. We review these claims for abuse of discretion. *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 930 (7th Cir. 1990), *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002), *Perlman v. Zell*, 185 F.3d 850, 858 (7th Cir. 1999).

Brunner's first claim is that the district judge should have entered judgment in his favor on the breach of contract claim following the first trial because of the interrogatory finding that VAS did not provide formal notice of a breach. Under the Illinois Uniform Commercial Code, a plaintiff is generally required to provide notice of the breach within a reasonable time after discovery and prior to filing suit. 810 ILCS 5/2-607(3)(a). However, "[d]irect notice is not required when . . . the seller has actual notice of the defect of the particular product." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589 (Ill. 1996).

Brunner reads *Connick* and similar cases differently, claiming that the required notice of the breach is not notice of the actual facts, but notice of the *buyer's claim* that the facts constitute a breach. *Whitwell v. Wal-Mart Stores Inc.*, 2009 U.S. Dist. LEXIS 115825, at *19 (S.D.Ill. Aug 21, 2009) (citing *American Mfg. Co. v. United States Shipping Board Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)). However, the cases Brunner cites here are instances where knowledge of a store policy or a problem with a line of products was employed in an attempt to impute actual knowledge of a problem with a specific purchase. Further, these cases actually undermine Brunner's claim because they support the idea that a defendant's prior knowledge of a unique problem with a specific product sold is actual notice, which would void the formal notice requirement.

Moreover, the jury found in a special interrogatory that Brunner had notice of undisclosed defects when he sold the plane to VAS. This intentional breach of the contract was obviously within his knowledge, regardless of formal notice. Further, evidence was introduced at trial showing that Brunner was also aware that VAS was unhappy with the plane soon after the sale, including an email reading: "Ed [Brunner] is concerned that you are having issues with the airplane and wants to assure you that there is nothing to hide with the maintenance or inspections." Based on the evidence and jury findings at trial, Brunner clearly had actual knowledge of contract-breaching defects with the plane and, therefore, formal notice was not required.

Brunner next claims that if the jury's damage award stands despite the lack of formal notice, Southaire should be allowed to set-off the $75,000 CFS settlement against these damages to avoid double recovery for VAS. He argues that under Illinois law, "[a] plaintiff

is only entitled to one recovery and only one satisfaction for claimed injuries pursuant to one cause of action, regardless of the number of theories of recovery advanced." *Foster v. Kanuri*, 608 N.E.2d 8, 10 (Ill.App.Ct. 1992). However, *Foster* and Brunner's other supporting cases all deal with interpretation of the Joint Tortfeasors Contribution Act, while the jury award here was for both tort and breach of contract claims. Further, as the district judge correctly recognized when Brunner advanced this same argument after both the first and second trials, in a case with multiple theories the burden is on the defendant seeking set-off to establish the amount that should be allocated to each individual theory of recovery. *Muro v. Abel Freight Lines, Inc.* 669 N.E.2d 1217, 1218 (Ill.App.Ct. 1996). If the defendant fails to do so, any attempt at allocation on the part of the trial judge would be purely speculative and improper. *Thornton v. Garcini*, 888 N.E.2d 1217, 1223 (Ill.App.Ct. 2008). Here, VAS sought punitive damages against CFS but not against Southaire and made claims against CFS which were not advanced against Southaire at trial. Therefore, some amount of the settlement is apportionable to these claims and damages and so would not be set-off against the Southaire damages. Brunner has made no effort, either at the district court or here, to apportion the CFS settlement amongst the various claims and types of damages, so set-off is not appropriate.[2]

The final issue we will discuss is Brunner's claim that even if Southaire is responsible for the jury award against it, the district judge erred by making it responsible for a portion of VAS's costs. Brunner contends that such an assessment is inappropriate because VAS was not the prevailing party, and that even if it was, because the jury award was less than 10% of VAS's last pre-trial settlement request, it should not be treated as the prevailing party for cost purposes.

A prevailing party is one who prevails as to a substantial part of the litigation, and a district judge enjoys "wide discretion in determining and awarding reasonable costs." *Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996). VAS originally filed fraud claims and violation of the Consumer Fraud Act claims against both Southaire and Brunner and a breach of contract claim against Southaire. Prior to trial, VAS dropped the Consumer Fraud Act claims, and at trial it prevailed on both the fraud and breach of contract claims. Given this, the judge was well within her discretion to find that VAS had prevailed in a substantial part of the litigation.

Brunner is correct in claiming that *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999),

---

[2] As the district judge noted in her denial of set-off after the initial trial, there is something unsettling about Brunner's entire approach to the CFS settlement that goes beyond the question of set-off. For example, although Brunner requested that CFS file the settlement under seal, he disclosed this amount, both in a post-trial motion and in open court, repeatedly, despite the judge's admonishments to the contrary.

states as a rule for this Circuit that recovery by a plaintiff of less than 10% of what he demanded prior to trial may disqualify him from being treated as a prevailing party for cost-shifting purposes even if the judge finds he prevailed in substantial part. However, *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000), suggests that the 10% threshold may be just a factor for consideration in a cost determination rather than a hard and fast rule, and that the impetus behind this threshold is to deter parties from putting defendants to the "bother" of defending against much larger claims than can be proved.

Considering the course of the litigation here, and the behavior of Brunner throughout, we don't believe he was put to more of a "bother" by the disparity between the pre-trial settlement demands and the eventual jury award than he would have been had the difference been smaller. Nor is it clear to us that Brunner is correct in calculating this ratio based on VAS's settlement demands. Putting aside the propriety of citing to confidential pre-trial settlement conference negotiations post-litigation, there were monetary claims in the original complaint that should have put Brunner on notice of how to organize his defense from the get-go better than, and earlier than, the claims made in non-binding pre-trial settlement negotiations would have. In *Tuf Racing Products* the court looked to settlement demands to determine the pretrial amount, but that was because no amount was specified in the complaint beyond an amount in excess of diversity requirements. *Id.* Here, we have a more specific complaint, which seeks "in excess of $200,000" plus costs on each of four counts, or a total minimum of $800,000 plus costs. Including the CFS settlement, VAS recovered nearly $178,000, well above 10% of what it was initially seeking in its original complaint, and therefore it was not an abuse of discretion for the district judge to determine that VAS was the prevailing party.

For the foregoing reasons, the judgment of the district court is AFFIRMED.